FILED

2020 Sep-16  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JANE DOE, a minor who sues by and through her guardians and Next Friends, Mary Doe and Martha Doe,** | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) | **Case No.: 2:19-cv-243-AMM** |
| | ) | |
| **HOOVER CITY BOARD OF EDUCATION; KATHY MURPHY; QUINCY COLLINS; MICHELLE KAISER,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION ON DEFENDANTS' MOTIONS TO DISMISS THE THIRD AMENDED COMPLAINT</u>

This matter comes before the court on motions to dismiss by Hoover City Board of Education ("the Board") and Kathy Murphy, Quincy Collins, and Michelle Kaiser (collectively, "the Individual Defendants"). Docs. 47 & 48. For the reasons below, the motions are **GRANTED IN PART** and **DENIED IN PART**. In an order entered contemporaneously herewith, the court will dismiss Count I against the Board, dismiss all counts against the Individual Defendants in their official capacity, and grant Doe's request for leave to file a corrected complaint.

## I.   BACKGROUND

### A. Allegations In The Third Amended Complaint

In relevant part, viewed in the light most favorable to Doe, the complaint alleges as follows:

In October of 2017, plaintiff Jane Doe enrolled as a new student at Trace Crossings Elementary School and was placed in teacher Michelle Kaiser's first-grade class. Doc. 46 ¶ 16. Shortly afterward, Ms. Kaiser noticed that Doe didn't want to go to the restroom and was generally disengaged in class. *Id*. ¶ 29. Ms. Kaiser informed Doe's parents. *Id*. Months passed. In January 2018, Principal Quincy Collins learned that several of Doe's classmates (whom the Third Amended Complaint calls "the Harassing Girls") had been sexually abusing another classmate, a girl identified only by the pseudonym "Jane Smith," on the playground and in the girls' restroom. *Id*. ¶¶ 20-23, 36. A parent of one of the Harassing Girls worked as a teacher's aide at the school. *Id*. ¶ 43. To discipline the Harassing Girls, Principal Collins made them run laps. *Id*. ¶ 24. Jane Smith's parents withdrew her from school in late January. *Id*. ¶ 25.

In the first weeks of February of 2018, Jane Doe's parents noticed her behavior deteriorating. *Id*. ¶ 27. "She became recalcitrant and intractable; a significant shift" from her ordinary attitude. *Id*. She fought her parents about going to school. *Id*. She told them that Ms. Kaiser was making her play with a group of

students she didn't want to play with. *Id*. ¶ 28. One of Doe's parents quit her job in order to spend more time with Doe. *Id*. ¶ 27.

On February 26, Doe's parents sent a letter to Principal Collins expressing concerns about Ms. Kaiser. *Id*. ¶ 30. The next day, Doe's parents learned that Doe had been assaulted at school. *Id*. ¶ 31.

"On a number of occasions during the . . . school year," the Harassing Girls had approached Doe in the restroom and on the playground and took turns "holding her while they pulled her pants and underwear down before digitally manipulating her vagina." *Id*. ¶¶ 18-19, 78. They also "took her into the girls' restroom and insisted that she wear a toddler diaper (a.k.a. a 'pullup') instead of underwear." *Id*. ¶ 19. Jane Smith initially took part in this abuse, but in January, when Smith "told the other Harassing Girls that she would no longer participate in [Doe's] sexual violation," the Harassing Girls "began treating Jane Smith just as they had Plaintiff Doe." *Id*. ¶¶ 20-21. After Smith withdrew from school in late January, the Harassing Girls continued to sexually abuse Doe. *Id*. ¶¶ 23-26.

After learning on February 27th that Doe had been assaulted, Doe's parents kept her out of school for a week. *Id*. ¶¶ 31-32. During that week, her parents met with Principal Collins to discuss her safety and asked that he allow them to be present during Collins's proposed meeting with Kathy Murphy, the Superintendent of Hoover City Schools. *Id*. ¶¶ 33-34. On March 5, Principal Collins met with

Superintendent Murphy to discuss how the school would respond to the assault, but Doe's parents were not included in the meeting. *Id*. ¶¶ 34-35. During the meeting, Collins, Murphy, and an assistant superintendent discussed a plan "that would involve placing Jane Doe in another class, counseling for Jane Doe at school, additional toileting opportunities for Jane Doe, an aide to supervise Jane Doe at lunch, recess, assemblies and field trips, special education on emotional and social skills, and removal of Kaiser." *Id*. ¶ 35. Other than the first and last aspects of that plan—Ms. Kaiser was placed on two-week administrative leave (the complaint specifies that one of those weeks fell during spring break, *id.* ¶ 39, but it is unclear when the other week fell); and Doe was not placed in different class, *id.* ¶ 36—the complaint is silent as to which aspects were carried out.

On March 7, a Wednesday, Doe's parents sent her back to school. *Id*. ¶ 32. She had to return to class with the Harassing Girls. *Id*. ¶ 36. The following Friday, Principal Collins told one of Doe's parents that the investigation was complete. *Id.* ¶ 37. The following Monday, after learning that Ms. Kaiser had returned to teach, that parent "requested a written update of the investigation including any findings and conclusions." *Id*. ¶ 38. The next day, Doe's parents were updated. *Id*. ¶ 39.

A week later, on the Friday before spring break, a classmate cut Jane Doe's hair. *Id*. ¶ 40. Doe's parent told Principal Collins about the incident on the Monday after spring break, but the complaint is silent as to whether he responded. *Id*. That

same day, Doe was pushed on the playground, and Doe's parent told Principal Collins about this incident as well. *Id.* ¶ 41. The next day, Principal Collins met with the teacher who had supervised the playground that day, the student who pushed Jane Doe, a student who witnessed the incident, and Jane Doe. *Id.* ¶ 42.

Twice during the following month, one of Doe's parents requested "a written copy of the safety and supervision plan for Jane Doe," but the complaint is silent as to whether those requests were granted. *Id.* ¶¶ 44, 46.

Toward the end of May, a student bit Jane Doe, bruising her face and lip. *Id.* ¶ 47. Again, one of Doe's parents told Principal Collins about this incident, but the complaint is silent as to whether he responded. *Id.* ¶ 47. A week later, Doe's parents withdrew her from Trace Crossings Elementary and enrolled her in a homeschooling ministry. *Id.* ¶ 48. She continues to suffer from the trauma of that schoolyear. *Id.* ¶ 90.

**B. Procedural History**

In February of 2019, Doe, through her parents, filed a complaint in this court against several defendants. Doc. 1. Over the next several months, Doe amended her complaint three times, Docs. 12, 37, & 46, and each time the defendants filed motions to dismiss, Docs. 18, 19, 38, 40, 47, & 48. The court did not rule on the substance of the prior motions to dismiss, instead allowing Doe to amend (and amend again) her pleadings. The operative complaint is the Third Amended

Complaint, Doc. 46, which asserts five counts. Counts I, II, and III assert state-law claims sounding in negligence and recklessness. Count IV asserts a claim under 20 U.S.C. § 1681 ("Title IX") against the Board, alleging that the Board "through its employee[s] Collins and Kaiser, had actual and/or constructive knowledge of the assaults, sexual abuse, harassment and misconduct by other students toward Plaintiff," and that it "acted unreasonably" and "with deliberate indifference" in response. Doc. 46 ¶¶ 80, 84. Count V asserts claims against all defendants under 42 U.S.C. § 1983 for violations of Doe's right to substantive due process and equal protection under the Fourteenth Amendment.

The Board and the Individual Defendants have again moved to dismiss. Docs. 47 & 48.[1]

## II.   STANDARD OF REVIEW

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not

---

[1] The Board's motion violates Exhibit B of the Initial Order, Doc. 17, by failing to include the required certification. Doc. 48. Additionally, the Board's motion purports to incorporate by reference the Board's two prior motions to dismiss, Docs. 40 & 19. Doc. 48 at 1 n.2; Doc. 40 at 1 n.2. This incorporation would bring the motion's page total to twenty-five, the maximum allowed, but all three motions are replete with block quotes and long footnotes, fifty footnotes in all. As just one example, footnote 3 of the Board's motion runs for nearly an entire page. *See* Doc. 48 at 2 n.3. Combined, the motions "circumvent page limitations by manipulating . . . line spacing, or other similar end runs," a practice prohibited by the Initial Order. Doc. 17 at 26 n.5. Particularly in light of two reminders from the court to brief the motions to dismiss in accordance with the Initial Order, Docs. 20 & 42, these violations are unexpected. Additionally, the Board's two prior motions to dismiss were terminated by the court because they were not directed at the operative complaint. Docs. 36 & 45. Nevertheless, the court exercises its discretion to consider the Board's prior arguments as though their incorporation were effective, despite these defects.

make "detailed factual allegations"; its purpose is only to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, the facts alleged in a complaint must do more than "speculat[e]" or raise "suspicion" about a claim for relief. *Id.* (citation omitted). To test the complaint, the court takes all factual allegations as true, discards any "conclusory allegations," *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018), and "draw[s] all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). These facts and inferences must amount to a "plausible" claim for relief, a standard that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III.   ANALYSIS

### A. Doe's Title IX Claim

Count IV alleges that the Board violated Title IX when it acted with deliberate indifference to repeated sexual assaults and harassment of Doe by her classmates. Doc. 46 ¶¶ 75-90. Additionally, Count IV alleges that the Board had the authority and opportunity to initiate corrective action to stop such unlawful conduct at the school before the Board learned of the assault and harassment of Jane Doe, based on what the Board knew about the assault of Jane Smith, and failed to do so. *Id.*

¶¶ 81-83. Count IV further alleges that the Board had the authority and opportunity to initiate corrective action to stop such unlawful conduct at the school after the Board learned of the assault of Jane Doe, and failed to do so. *Id*. ¶¶ 83-84.

Title IX prohibits discrimination on the basis of sex and provides a vehicle for individuals to recover damages when such discrimination occurs. *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992). It provides, in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681.

When a school that is a recipient of federal funding exhibits "deliberate indifference" to "known acts" of student-on-student sexual harassment, it may "in certain limited circumstances" be "subject[ing]" a person to discrimination on the basis of sex and making itself liable for damages under Title IX. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). In *Davis*, the United States Supreme Court held that a complaint stated a Title IX claim based on a school board's deliberate indifference to a fifth-grader's known sexual harassment of a classmate. *Id*. at 632-33, 653-54.

A claim for recovery under Title IX for student-on-student harassment includes four elements:

> First, the defendant must be a Title IX funding recipient. . . . Second, an "appropriate person" must have actual knowledge of the

discrimination or harassment the plaintiff alleges occurred. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998). . . . Third, a funding recipient is liable for student-on-student harassment only if "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." *Davis,* 526 U.S. at 633. . . . Fourth, the discrimination [or harassment] must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis,* 526 U.S. at 633.

*Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir. 2007).

### 1. Federal Funding Recipient

The complaint alleges (and the Board does not dispute) that the Board is a Title IX funding recipient. Doc. 46 ¶ 4.

### 2. Actual Knowledge

The actual-knowledge element of a Title IX claim requires that "an 'appropriate person' must have actual knowledge of the discrimination or harassment the plaintiff alleges occurred." *Williams*, 477 F.3d at 1293. "An appropriate person is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Id.* (internal alterations and quotation marks omitted).

The Board has not argued that either Principal Collins or Ms. Kaiser do not qualify as an "appropriate person" in this case. Accordingly, the dispositive question as to this element is whether the complaint sufficiently alleges that Principal Collins or Ms. Kaiser had "actual knowledge of the discrimination or harassment the plaintiff alleges occurred." *Id.*

The Supreme Court has phrased this requirement in three ways: as a requirement of "actual knowledge by a school official with authority to end the harassment," *Gebser*, 524 U.S. at 283; "actual knowledge of the teacher's conduct," *id*. at 289 (in *Gebser*, the teacher was the harasser); or "actual knowledge of discrimination in the recipient's programs," *id*. at 290. The requirement of actual knowledge ensures "that recipients [can] be liable in damages only where their own deliberate indifference effectively 'cause[d]' the discrimination." *Davis*, 526 U.S. at 642-43 (citing *Gebser*, 524 U.S. at 291).

The Board concedes that Principal Collins actually knew that the Harassing Girls had sexually assaulted Jane Smith. Doc. 48 at 3. What the Board did not know, it argues, was that the Harassing Girls' conduct involved a second victim, Jane Doe. *Id*. at 3-4. The Board further argues that "Principal Collins was not made aware of any alleged misconduct directed toward Jane Doe until February 28, 2018." *Id*.

The Board's argument that its actual knowledge of the Harassing Girls' abuse of Jane Smith cannot satisfy the actual-knowledge requirement for Jane Doe's lawsuit is wrong. The Board focuses on actual knowledge of the identity of the harassers' specific victim, but under controlling precedent the proper focus is on actual knowledge of the harassers' conduct. Most notably, in *Williams*, the Eleventh Circuit held that a university's actual knowledge that a student had sexually harassed people other than the plaintiff fulfilled the actual-knowledge element of the

10

plaintiff's Title IX claim: the complaint alleged that officials at the University of Georgia ("UGA") knew the student's history of sexual harassment at his previous schools and nevertheless recruited him to be a student-athlete at UGA, where he conspired with others to sexually assault the plaintiff. *Williams*, 477 F.3d at 1292, 1296 (concluding that the school officials' "decision to recruit [a student with a known history of harassment] and admit him through UGA's special admission process was a form of discrimination that [the plaintiff] suffered"). Here, the complaint alleges that (1) Principal Collins and Ms. Kaiser learned in January of 2018 that the Harassing Girls had sexually assaulted Jane Smith, and (2) the Board could have taken corrective action to prevent further assault of Doe, but acted with deliberate indifference instead. Doc. 46 ¶¶ 23-26, 77, 82-84. Under *Williams*, this allegation sufficiently pleads the actual-knowledge element of Doe's Title IX claim.

Other precedents confirm that the analysis pivots on knowledge of the harassment, not knowledge of the harassment's particular victim. *First*, even in the cases where the allegations of actual knowledge were insufficient, the analysis focused on knowledge of the harassment, not knowledge of the harassment's particular victim. *See Gebser*, 524 U.S. at 291 (the information known to the school "consisted of a complaint from parents of other students charging only that [the teacher] had made inappropriate comments during class, which was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in

a sexual relationship with a student"); *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1373 (11th Cir. 2000) (concluding that the actual-knowledge requirement was not satisfied because a "complaint [by a different student] of an incidental touching during an athletic event and a perceived imminent touching could not, as a matter of law, apprise Defendants to the possibility that [the teacher] was sexually molesting Plaintiffs"). *Second*, what the *Davis* Court called the "most obvious example of student-on-student sexual harassment capable of triggering a damages claim"—a group of male students barring a group of female students from using the computer lab—does not square with the Board's victim-specific view of actual knowledge. *Davis*, 526 U.S. at 650-51. A claim based on such conduct would not turn on the school's actual knowledge of the identity of each female student shut out of the computer lab; it would turn on the school's actual knowledge of male students' improper conduct toward female students. *Id*. Under these precedents, Jane Doe's allegation that the Board actually knew that the Harassing Girls had sexually assaulted Jane Smith, and remained deliberately indifferent while the Harassing Girls continued to sexually assault Jane Doe, adequately pleads the actual-knowledge element of a Title IX claim.

Separately, the Board's victim-specific argument about actual knowledge does not respond to Jane Doe's other allegation under Title IX—namely, that the Board discriminated against Jane Doe even after Doe's parents learned that she had

been assaulted and met with Principal Collins to discuss her safety. *See* Doc. 46 ¶¶ 31, 33, 83, 84. The Board asserts that the incidents that followed the sexual assault of Doe are "unrelated and isolated," and therefore cannot support Title IX liability. Doc. 48 ¶ 6. But Doe's complaint does not allege that the incidents were "unrelated and isolated," or use any similar language, or otherwise require an inference to that effect. Because the court is required to draw all reasonable inferences in favor of Doe—not against her—the court rejects this argument by the Board.

### 3. Deliberate Indifference

The third element of a Title IX claim is that "'the funding recipient act[ed] with deliberate indifference to known acts of harassment in its programs or activities.'" *Williams*, 477 F.3d at 1293 (quoting *Davis,* 526 U.S. at 633). Like the requirement of actual knowledge, the element of deliberate indifference ensures that a "recipient of federal funds may be liable in damages under Title IX only for its own misconduct," not that of a third party. *Davis*, 526 U.S. at 640. "Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment." *Id*. at 644. Thus, liability for damages is limited "to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id*. at 645.

Where "the misconduct occurs during school hours and on school grounds[,] . . . the misconduct is taking place 'under' an 'operation' of the funding recipient." *Id*. at 646 (quoting 20 U.S.C. §§ 1681(a), 1687 (defining "program or activity" in Title IX)). A funding recipient's "control over the harasser and the environment in which the harassment occurs," *id*. at 644, is all the more salient where the harassing students are in grade school as opposed to high school or college, *id*. at 649. A "funding recipient[] [may be] deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id*. at 648.

*Davis* and *Williams* govern the analysis of both control and reasonableness. In *Davis*, the complaint alleged that throughout a six-month period, a fifth-grade student engaged in numerous instances of sexual harassment—from lewd remarks, to attempted groping, to the final incident, in which he rubbed his body against the plaintiff's in the hallway. 526 U.S. at 633-635. The plaintiff alleged that her classmate was never disciplined, and "only after more than three months of reported harassment was she even permitted to change her classroom seat so that she was no longer seated next to" the classmate. *Id*. at 635. The Court concluded that the school's alleged response could amount to deliberate indifference. *Id*. at 649.

In *Williams*, the Eleventh Circuit held that the complaint sufficiently pleaded deliberate indifference when it alleged that UGA placed a student with a known

history of harassment "in a student dormitory and fail[ed] to supervise him in any way . . . [which] substantially increased the risk faced by female students at UGA." 477 F.3d at 1296. Separately, the court concluded that the complaint sufficiently pleaded deliberate indifference when it alleged that UGA waited eight months after the alleged rape (while a criminal case related to the rape was pending) to proceed with its own disciplinary measures, thereby allowing accused rapists to continue living in student housing and contributing to the plaintiff's decision that she wasn't safe returning to school. *Id*. at 1296-97.

Under *Davis* and *Williams*, Doe's complaint alleges facts sufficient to state a plausible claim that the Board acted with deliberate indifference in response to known acts of sexual harassment and thus subjected her to discrimination. The court looks first to the control the Board had over the Harassing Girls and the environment in which they sexually abused Doe. The Board allegedly had a high degree of control over the Harassing Girls (who were first-graders) and their movements throughout the school day. *See* Doc. 46 ¶¶ 12, 82-83. Indeed, the complaint alleges that the school controlled both when and how first-graders could use the restroom: school rules prohibited multiple children from going to the restroom at the same time without adult supervision. *Id*. ¶ 49.

Next, the court considers the allegation that the disciplinary measures the Board took (1) after Principal Collins learned that the Harassing Girls had sexually

abused Jane Smith, and (2) after he learned that the Harassing Girls had sexually abused Jane Doe, were clearly unreasonable in light of the known circumstances.

As to (1), despite Principal Collins's considerable "control over the harassers and the environment in which the harassment occur[ed]," *Davis*, 526 U.S. at 644, the complaint alleges that Principal Collins responded to the sexual abuse of Jane Smith by making the Harassing Girls run laps, Doc. 46 ¶ 24.

Measured against *Davis*, this allegation sufficiently pleads deliberate indifference. In *Davis*, the Court concluded that the complaint suggested "that petitioner may be able to show . . . deliberate indifference on the part of the Board, which made no effort whatsoever either to investigate or to put an end to the harassment." 526 U.S. at 654. There, the board merely moved the plaintiff's seating assignment away from her harasser, and only after three months of complaints. *Id.* at 635. Likewise, making the Harassing Girls run laps does nothing either to investigate or to put an end to their harassment of their classmates. Indeed, the clear unreasonableness of Principal Collins's response could be reasonably inferred from the allegation that after he made the Harassing Girls run laps, their sexually abusive conduct "continued unabated." *See* Doc. 46 ¶ 26.

When the court measures Doe's allegations against the allegations in *Williams*, the result is the same. There, the Eleventh Circuit held that the allegations of deliberate indifference were sufficient because the complaint alleged that UGA

failed to supervise a student-athlete living in campus housing with a known history of sexual assault. *Williams*, 477 F.3d at 1296. On that reasoning, once the Board became aware that the Harassing Girls had sexually abused Jane Smith, its alleged failure adequately to supervise them when they used the restroom and playground, thereby creating opportunities for them to continue sexually assaulting and harassing Jane Doe, could constitute deliberate indifference. Under *Davis* and *Williams*, then, the allegations about the Board's conduct in late January and February 2018 sufficiently plead the deliberate-indifference element of Doe's Title IX claim.

Additionally, the allegations about (2), the disciplinary measures the Board took after learning that the Harassing Girls abused Doe—particularly the Board's decision not to remove the Harassing Girls from the class they shared with Doe— are sufficient to plead a separate instance of deliberate indifference. Doe alleges that when she returned to school after her parents kept her home for a week and met with Principal Collins regarding her assault, the Harassing Girls were still in her class. Doc. 46 ¶¶ 32-33, 36. She also alleges that their teacher, Ms. Kaiser, was suspended for two weeks (one of which was spring break). *Id*. ¶ 39. Doe also alleges that the school's deliberate indifference allowed the harassment to continue because in the three months after the school learned that she had been sexually abused by her classmates, her hair was cut, she was pushed, and she was bitten on the lip and bruised. *Id*. ¶¶ 40-41, 47.

The Board's motion to dismiss provides no controlling precedent—or even reasoned analysis—that suggests that these allegations of deliberate indifference, viewed in the light most favorable to Doe, are insufficient to plead that the Board's actions "cause[d] [her] to undergo harassment or ma[de] [her] liable or vulnerable to it." *Davis*, 526 U.S. at 645 (internal quotation marks omitted).

Rather, in passing and in a footnote, the Board cites the portion of *Davis* explaining that Title IX does not require a school to take whatever measures a disgruntled student demands, but to "respond to known peer harassment in a manner that is not clearly unreasonable," *Davis*, 526 U.S. at 648-49. *See* Doc. 19 at 4 n.8. The Board asserts that Title IX does not allow Doe to demand that the Harassing Girls' conduct be "remed[ied]," and emphasizes that Principal Collins agreed to meet with Doe's parents, "considered and/or developed" a safety plan for Doe in March, and placed Ms. Kaiser on leave for two weeks. *Id*. at 3-4. But as explained above, *Davis* does not support the Board's motion; it requires the court to hold that Doe's complaint sufficiently pleads deliberate indifference. *See supra* at pp. 14-17.

Finally, the Board argues that Doe's complaint does not state a claim for relief because it is "conspicuously devoid" of an allegation that Doe was molested after her sexual abuse "was reported to school authorities." Doc. 48 at 4. But the Board cites no precedent requiring a plaintiff asserting a Title IX claim to allege that students with a known history of harassment sexually molested her *again* after the

school learned that she had been one of their victims. *Williams* counsels against such a requirement. There, the court held that UGA's alleged response to a rape incident reflected "deliberate indifference again" to known acts of harassment (the first time UGA acted with deliberate indifference was before the plaintiff was raped, when it allegedly placed a student with a known history of harassment in campus housing and failed to supervise him); the court did not require the plaintiff to allege that she was raped again after the rape incident was reported to UGA. *See Williams*, 477 F.3d at 1296.

### 4. Harassment Effectively Denying A Victim's Equal Access To Education

To plead the final element of a Title IX claim in the context of "peer harassment," a plaintiff must allege that the harassing student's "behavior [was] serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." *Davis*, 526 U.S. at 652. This requirement "reconcile[s] the general principle that Title IX prohibits official indifference to known peer sexual harassment with the practical realities of responding to student behavior." *Id*. at 653. The focus in the fourth element is on the severity of the harassing student's behavior and the effect it had on the plaintiff. *See id.* at 650-51. "[S]imple acts of teasing and name-calling" do not "rise[] to the level of actionable 'harassment.'" *Id.* at 651-52.

Here again, *Davis* and *Williams* govern the analysis. In *Davis*, the plaintiff did not allege that she withdrew from school because of the harassment. But the Court concluded that the plaintiff had sufficiently pleaded that the sexual "misconduct was severe, pervasive, and objectively offensive" because she alleged she "was the victim of repeated acts of sexual harassment by [her classmate] over a 5-month period," even physical harassment, and "there were multiple victims who were sufficiently disturbed by [the classmate's] misconduct to seek an audience with the school principal." *Davis*, 526 U.S. at 653-54. The plaintiff's grades allegedly declined, *id*. at 652, and the Court described that allegation as suggesting that the harassment had "a concrete, negative effect on her . . . ability to receive an education," *id*. at 654.

In *Williams*, the court concluded that the complaint sufficiently pleaded actionable harassment because, although the sexual abuse occurred over a period of hours, not months, the alleged rape incident "involved a ringleader who lured the victim to his territory and then conspired with two friends to commit two separate acts of sexual assault." 477 F.3d at 1298. The rape incident, "together with the discrimination that occurred before and after" the rape—UGA's recruitment, failure to supervise, and inadequate discipline of the rapists, which caused the plaintiff to withdraw from the university—sufficiently pleaded "that the alleged discrimination effectively barred [a college student's] access to an educational opportunity or

benefit, namely pursuing an education at UGA." *Id.* (internal quotation marks omitted).

Measured against these benchmarks, Doe's complaint sufficiently pleads that the abuse and harassment she suffered was "serious enough to have the systemic effect of denying [her] equal access to an educational program or activity." *Davis*, 526 U.S. at 652. Viewed in the light most favorable to Doe, the complaint alleges that the sexual abuse began as early as October or November 2017, shortly after Doe joined Ms. Kaiser's class, when Ms. Kaiser noticed that Doe did not want to go to the restroom and was disengaged during class. Doc. 46 ¶ 29. Over several months, Doe and Smith allegedly were victims of repeated acts of physical sexual abuse by the Harassing Girls. *Id.* ¶¶ 18-22. Smith told her parents, who sought an audience with the school principal. *Id.* ¶ 23. The complaint alleges that after the school responded by making the Harassing Girls run laps, Smith's parents withdrew her from school, and the Harassing Girls continued to abuse Doe. *Id.* ¶¶ 24-26. Doe missed a week of school, and her behavior deteriorated so badly that her parent quit her job. *Id.* ¶¶ 27, 32. In addition to the series of sexual abuses, the harassment allegedly continued when Doe returned to school after being out for a week. *Id.* ¶¶ 40-42, 47. After the school had allegedly failed to implement a safety plan that could prevent Doe from being abused and harassed, on June 1, 2018, Doe's parents withdrew her from school. *Id.* ¶ 48. Doe's allegation—as a first-grader—is that after

nearly a full year of sexual abuse and related harassment, which the school was aware of and did not effectively discipline, she withdrew from public school. Under *Davis* and *Williams*, this alleges actionable harassment.

The Board makes three arguments about this element of Doe's Title IX claim, and the court considers each in turn. *First*, the Board suggests that what it calls the "vaginal touching incident[s]" are properly contextualized as instances of young students "still learning how to interact appropriately with their peers." Doc. 19 at 4 & n.6 (quoting *Davis*, 526 U.S. at 651). The Board's argument attempts to downplay the alleged sexual abuse of Doe, equating it with the "insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it," but ultimately "understandable" rather than actionable "harassment." Doc. 40 at 2-3 (quoting *Davis*, 526 U.S. at 651-52). But the sufficiency of Doe's complaint rises and falls on the substance of her allegations, not the Board's paraphrasing of them. Doe's allegation is that the Harassing Girls repeatedly "t[ook] turns standing guard" and "holding [Doe] while they pulled her pants and underwear down before digitally manipulating her vagina." Doc. 46 ¶¶ 18-19, 78. Serial gang molestation is by any measure sexual harassment, not something short of it, and fundamentally unlike the "simple acts of teasing and name-calling among school children" that are not actionable under *Davis*. 526 U.S. at 652.

*Second*, the Board suggests that the alleged sexual abuse was not "gender-based" because "the other students involved in the alleged vaginal touching activity were a small group of Jane Doe's female first grade classmates." Doc. 19 at 2 & n.4. But under controlling precedent decided more than two decades ago, the same-sex nature of the molestation does not make it any less actionable. *See Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75 (1998).

*Third*, the Board asserts that the alleged hair-cutting, shoving, and lip-biting are not relevant to Doe's Title IX claim because they are not "gender related." Doc. 48 at 4-5. This argument ignores the substance of Doe's claim. Doe's claim is not that she is entitled to relief under Title IX solely because of hair-cutting, shoving, and lip-biting. It's that she is entitled to relief under Title IX because after the Harassing Girls repeatedly sexually abused her and another student, and after the Board learned of this abuse, and after the Board responded with deliberate indifference, she continued to be a target for harassment, which ultimately deprived her of any meaningful, let alone equal, opportunity to learn at Trace Crossings Elementary. Under *Davis* and *Williams*, this allegation is sufficient to state a claim.

## B. Section 1983 Claims

Although the caption of Count V reads "42 U.S.C. § 1983 [Violation of 14th Amendment, Due Process, Equal Protection, 42 U.S.C § 1983] *As to* Defendants School Board, Murphy, Collins and Kaiser," Doc. 46 at 19 (brackets and emphasis

in original), that count alleges in substance only that "Defendants School Board, Murphy and Collins" violated Doe's "Fourteenth Amendment Equal Protection rights," *id*. ¶ 94. Nevertheless, the parties have treated Count V as it was captioned— namely, as including a claim for violation of both Doe's equal protection rights and her substantive due process rights. *See* Doc. 40 at 7 & 4 n.7; Doc. 47 at 5.  Because the factual allegations applicable to both a due process and an equal protection claim are present in Doe's complaint, and because the parties construed Count V of her complaint to raise both a due process claim and an equal protection claim, the court will construe Count V to raise both claims. To eliminate any doubt, Doe may add a reference to the Due Process Clause in paragraph 94 when she corrects her complaint to add Ms. Kaiser's name to the paragraphs in Count V, as discussed below. *See Busby v. City of Orlando*, 931 F.2d 764, 771 n.4 (11th Cir. 1991).

### 1. The Section 1983 Claim Against The Board

"Section 1983 allows persons to sue individuals or municipalities acting under the color of state law for violations of federal law." *Hill v. Cundiff*, 797 F.3d 948, 976 (11th Cir. 2015). Doe's Section 1983 claim against the Board is that the Board violated her rights under the Fourteenth Amendment when it failed to protect her from sexual assault and harassment at school. Doc. 46 ¶ 94.

The Board's motion to dismiss Doe's Third Amended Complaint treats Doe's claim under 42 U.S.C. § 1983 as identical to her claim under Title IX. *See* Doc. 48

at 5. But as the Eleventh Circuit has explained in a case familiar to all counsel in this case, "Title IX and [Section] 1983 are different," and a court's "resolution of [a plaintiff's] Title IX suit does not dictate the result of [the court's] [Section] 1983 analysis." *Hill*, 797 F.3d at 976. Accordingly, this court analyzes Doe's Section 1983 claim separate and apart from her Title IX claim.

A municipality or municipal entity such as the Board "may not be held liable for constitutional deprivations on the theory of *respondeat superior*." *Id.* at 977. Liability for constitutional torts attaches to a municipality only if "such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Id.* (internal quotation marks omitted). A complaint must include sufficient factual allegations to suggest "that the municipal action was taken with the requisite degree of culpability" and to suggest "a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (internal quotation marks omitted). This requires the court to "carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* (internal quotation marks omitted).

In an earlier motion, the Board argued that the Second Amended Complaint failed to "allege or identify a municipal policy or custom as the moving force behind the alleged harassment" of Doe. Doc. 40 at 4-5. But that's not required. As *Hill*

explained, a municipality may be held liable for "the actions of an official fairly deemed to represent government policy." 797 F.3d at 977 (quoting *Denno v. Sch. Bd. of Volusia Cnty., Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000)). Doe's Section 1983 claim against the Board is that the Board violated her rights under the Fourteenth Amendment when Superintendent Murphy and Principal Collins failed to protect her from sexual assault and harassment by students at school. Doc. 46 ¶ 94. The complaint alleges that Principal Collins was "the highest-ranking school official present at Trace Crossings Elementary." *Id.* ¶ 52. Depending on the development of the factual record, Doe may be able to establish that the evidence as to her allegations against Superintendent Murphy and/or Principal Collins satisfies the legal requirements for municipal liability. Accordingly, the Board's motion to dismiss the Section 1983 claim against it is denied.

### 2. The Section 1983 Claim Against The Individual Defendants

Doe also has pleaded Section 1983 claims against Superintendent Murphy, Principal Collins, and Ms. Kaiser. Doe asserts that her rights under the Fourteenth Amendment were violated when the Individual Defendants failed to protect her from sexual assault and harassment by students at school. Doc. 46 ¶ 94. Doe alleges that Ms. Kaiser "exhibited deliberate indifference to her official duties as an educator . . . when she disregarded the risk of harm that would result from her failure to follow the rule prohibiting multiple children from using the restroom at a time." *Id.* ¶ 49.

Doe alleges that Superintendent Murphy "had actual notice of the student-on-student assault involving Plaintiff and was deliberately indifferent to the need to protect Plaintiff . . . [and] refused to meet with Jane Doe's parents after she learned of the multiple assaults or assist in any way with providing a safety plan for Jane Doe." *Id*. ¶ 50. Doe alleges that Principal Collins "had actual notice of the student-on-student assault involving Plaintiff and was deliberately indifferent to the need to protect Plaintiff from the risk of assault.'" *Id*. ¶ 52.

### a. Ms. Kaiser

Ms. Kaiser asserts that there is no federal claim pleaded against her because, although her name appears in the caption of Count V, her name is missing from the paragraphs in that Count. Doc. 47 at 8. Doe contends that this was an inadvertent omission and that numerous factual allegations in the complaint expressly refer to Ms. Kaiser and make clear the factual basis for Doe's claims against her in this case. Doc. 51 at 13 n.2.

The purpose of a complaint is "to 'give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *accord Busby*, 931 F.2d at 770 n.4. Because the caption of Count V and the numerous factual allegations that refer to Ms. Kaiser make clear that Doe is bringing a Section 1983 claim against Ms. Kaiser and state the grounds upon which that claim

rests, *see* Doc. 46 ¶¶ 28, 29, 49, the court declines to find that Doe's inadvertent exclusion of Ms. Kaiser from the list of names in paragraphs 92-96 of the complaint means that Doe has not asserted a Section 1983 claim against Ms. Kaiser.

The Eleventh Circuit case that Kaiser suggests would support such a finding is inapposite. The issue in *Lundgren v. McDaniel*, 814 F.2d 600 (11th Cir. 1987), was whether the caption of a complaint conclusively determined the capacity (individual or official) in which a party was sued; *Lundgren* does not address whether the caption of a count conclusively determines the defendants against which claims in that count are brought. *See id.* at 604 n.2.

For the avoidance of doubt, the court grants Doe leave to amend her complaint to correct her inadvertent omission of Kaiser's name from paragraphs 92-96. This result renders moot Ms. Kaiser's argument that in the absence of federal claims against her, the court should decline to exercise jurisdiction over the state-law claims. *See* Doc. 47 at 9-12.

**b. Substantive Due Process**

"Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009). "Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," and "actions intended to injure in some way

unjustifiable by any government interest are those mostly likely to rise to the conscience-shocking level." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1375-76 (11th Cir. 2002) (internal citations and some marks omitted). "Acts that fall between the poles of negligence and malign intent require courts to make closer calls, in which the determination of what shocks the conscience is context-specific." *Id.* at 1376 (internal citation and quotation marks omitted).

Viewed in the light most favorable to Doe, Doe's substantive due process claim is that the Individual Defendants' actions were conscience-shocking when: (1) after Jane Smith reported that she was being sexually assaulted by the Harassing Girls, Ms. Kaiser continued to allow multiple children at a time to use the restroom without adult supervision, and Principal Collins responded only by making the Harassing Girls run laps, thus allowing the Harassing Girls to continue to sexually assault Doe, Doc. 46 ¶¶ 18-26, 49; and (2) after Doe reported that she was being sexually assaulted by the Harassing Girls, Superintendent Murphy refused to "assist in any way with providing a safety plan for Jane Doe," and Principal Collins's response was so inadequate that over the ensuing weeks, Doe's classmates were allowed to cut her hair, shove her, and bite and bruise her face and lip, ultimately causing her to withdraw from school. *Id.* ¶¶ 32-48, 50-51.

The Individual Defendants argue that these allegations do not state a claim against them for violations of substantive due process because they had no duty to

protect Doe from repeated sexual assaults by her classmates. *See* Doc. 47 at 5-7. They suggest that the allegations at most constitute deliberate indifference, which, they argue, is insufficient to state a substantive due process claim. *See id*.

The Eleventh Circuit considered whether allegations of deliberate indifference may satisfy the controlling standard for substantive due process claims in *Davis v. Carter*, in which the plaintiffs' son died the morning after an "intense and unreasonable" high-school football practice. 555 F.3d at 980. The complaint alleged that the football coaches were "deliberately indifferent to the safety risks posed" by the practice. *Id.* at 984. The Eleventh Circuit observed that the coaches had not intended to injure the plaintiffs' son. *Id*. Rather, he had "voluntarily participated in an extracurricular after-school activity" that resulted in his "unfortunate" death the next morning. *Id*. Under those circumstances, the Eleventh Circuit held that "the complaint's allegations of deliberate indifference, without more, do not rise to the conscience-shocking level required for a constitutional violation." *Id*.

Doe was not the "unfortunate" high-school-aged victim of an "intense and unreasonable" but "voluntar[y] . . . extracurricular after-school activity." *See id.* at 980, 984. Doe's claim is that, as a first-grader, she was repeatedly sexually assaulted at and during school because the Individual Defendants did nothing to stop classmates under their supervision and with a known history of sexual harassment

from cornering her on the playground and in the restroom and sexually assaulting her. Moreover, the court cannot say as a matter of law that if proven, depending on the evidentiary record, Doe's factual allegations could not shock the conscience. *See* Doc. 46 ¶¶ 18-26, 49; Doc. 52 at 15 ("[S]imply ignoring Jane Smith's complaint that she was being sexually assaulted by children on the playground and doing nothing but requiring the Harassing Girls to run laps and allowing the sexual assault to continue to harm the Plaintiff, Jane Doe, can be found to 'go beyond' deliberate indifference . . . .") (citing *Davis*, 555 F.3d at 984). Accordingly, Doe has adequately pleaded her substantive due process claim.

The Individual Defendants do not address *Davis v. Carter*, nor do they mention the applicable legal standard of conduct that shocks the conscience. Rather, they cite three other cases. The court considers each in turn. *First*, the Individual Defendants cite *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), for the proposition that substantive due process does not require the state to protect citizens from private actors. Doc. 47 at 5-6. But the Individual Defendants do not offer any analysis as to why that case should control this one, *see id.*, and it doesn't. There, the Supreme Court affirmed a summary judgment ruling that the connection between the conduct of social service workers and the "private violence" done to a child in his home by his father was "too attenuated" to establish causation for a substantive due process claim. *See DeShaney*, 489 U.S. at 194. The

Court reasoned that "[w]hile the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id*. at 201. The opposite is true here: viewed in the light most favorable to Doe, the complaint alleges that the Individual Defendants' conduct subjected and made Doe more vulnerable to sexual abuse and harassment at school. Separately, the *DeShaney* Court was reluctant to impose a constitutional duty on government employees to intervene into the private relationship between a child and his father because of the delicate constitutional balance in that situation: the social workers could face "charges of improperly intruding into the parent-child relationship, charges based on the same Due Process Clause that forms the basis for the present charge of failure to provide adequate protection." *Id*. at 203. That constitutional delicacy is absent here. *DeShaney* does not require—or even support—dismissal of Doe's claim at the pleading stage.

*Second*, the Individual Defendants cite *Worthington v. Elmore County Board of Education*, 160 F. App'x 877 (11th Cir. 2005), for the proposition that "public schools generally do not have the requisite level of control over children to give rise to a constitutional duty to protect them from third-party actors" based on a "special relationship," *id*. at 881. *See* Doc. 47 at 6. But the court's analysis of a substantive due process claim no longer turns on whether the state-actor had a "special relationship" with the plaintiff and thus a duty to protect; that standard was

"superceded by the standard employed by the Supreme Court in *Collins* [*v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992)]," which is whether the state-actor's conduct "can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003). And in any event, *Worthington* is fundamentally unlike this case. There, the defendants were granted judgment as a matter of law at the close of the plaintiff's case at trial because there was no evidence that the student who sexually assaulted the plaintiff "had previously committed a sexual assault or was a known threat to do so." *Worthington*, 160 F. App'x at 885. *Worthington* does not hold that a complaint fails to state a plausible claim for relief for violation of substantive due process when it alleges that a first-grader was repeatedly sexually assaulted because school officials failed to stop classmates with a known history of sexual assault from sexually assaulting her at school.

*Third*, the Individual Defendants quote this excerpt of a sentence in *Nix v. Franklin County School District*, 311 F.3d 1373 (11th Cir. 2002), a case in which a high-school student died in a poorly-executed science experiment: "deliberate indifference is insufficient to constitute a due-process violation in a non-custodial setting." Doc. 47 at 6 (quoting *Nix*, 311 F.3d at 1377). But in making that statement, the Eleventh Circuit was describing caselaw rejecting deliberate indifference "claims of government employees arising out of unsafe working conditions"

inherent to the employee's job. *Nix*, 311 F.3d at 1377 (citing *White v. Lemacks*, 183 F.3d 1253 (11th Cir. 1999), in which nurses working at a jail were assaulted by an inmate being held on assault charges; and *Collins*, 503 U.S. 115, in which "an employee in the sanitation department . . . died of asphyxia after entering a manhole to unstop a sewer line," *id*. at 117). The Eleventh Circuit in *Nix* then went on to describe prior cases deciding whether acts of school officials against high-school and college students shocked the conscience and gave rise to a constitutional violation. *Nix*, 311 F.3d at 1378. In affirming summary judgment for the defendants, the Eleventh Circuit explicitly warned that its "holding is a narrow one; it would not necessarily control, say, a similar accident in a 4th-grade classroom, or even other types of seriously harmful behavior occurring in a high-school class." *Id*. at 1379 n.2. Doe's case does not involve the limited context of a government employee injured by unsafe conditions inherent in a job; nor was she accidentally harmed when an experiment in her high-school science class went wrong. *Nix* does not require dismissal of Doe's claim at the pleading stage. *See id.*

Although the court cannot know whether Doe ultimately will adduce evidence that will satisfy the demanding "shock-the-conscience" test, the Individual Defendants have not identified any binding precedent holding that the conduct alleged in Doe's complaint as a matter of law cannot shock the conscience. "Rules of due process are not . . . subject to mechanical application in unfamiliar territory,"

*County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998), particularly at the pleading stage. The Individual Defendants' motion to dismiss Doe's substantive due process claim is denied.

### c. Equal Protection

"Section 1983 allows persons to sue individuals . . . acting under the color of state law for violations of federal law," including the Equal Protection Clause of the Fourteenth Amendment, "which confers a federal constitutional right to be free from sex discrimination." *Hill v. Cundiff*, 797 F.3d 948, 976 (11th Cir. 2015). "A governmental official may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment." *Id.* at 978 (certain marks omitted). Put differently, "deliberate indifference to sexual harassment is an equal protection violation." *Id.* at 979. To state a claim for relief under Section 1983, a complaint must allege a fact from which the court could reasonably infer that "the individual defendant actually knew of and acquiesced in the discriminatory conduct." *Id.* at 978 (internal quotation marks omitted).

The Individual Defendants do not dispute that Doe has pleaded that they were deliberately indifferent to her sexual abuse and harassment. *See* Doc. 47 at 7-8. Under *Hill*, those allegations are sufficient to state an equal protection claim on which relief may be granted under Section 1983.

Rather, the Individual Defendants argue that the complaint fails to state such a claim because it does not allege "facts that could support a reasonable inference [that] Jane Doe's treatment was because of her gender." Doc. 47 at 8. Further, the Individual Defendants assert that Doe's allegations about Jane Smith are irrelevant because, even if the allegations are true, they "do not show that the Defendants treated a similarly situated student differently from Jane Doe. Rather, the allegations are that Jane Smith was treated the same as Jane Doe." Doc. 47 at 8.

Federal law does not require Doe to allege that she was sexually assaulted or harassed differently from other girls who also were sexually assaulted or harassed. She must allege that she was sexually assaulted or harassed because she is a girl, which the court reasonably infers from Doe's allegations about the sexual nature of the assaults. If other girls (such as Smith) also were sexually assaulted, that does not diminish, let alone destroy, Doe's allegation that she was assaulted based on her sex. On the Individual Defendants' logic, if the Harassing Girls had sexually assaulted many girls, none of those girls would have an equal protection claim for discrimination based on sex, even if school officials were deliberately indifferent. That is not the law.

## C. State-Law Claims

The complaint asserts Alabama state-law claims sounding in negligence and recklessness against the Board (Count I), negligence against Ms. Kaiser and

Principal Collins (Count II), and recklessness against Principal Collins (Count III).

Ms. Kaiser and Principal Collins argue that claims against them in their official

capacities are duplicative of claims against the Board itself, Doc. 47 at 1-3, and Doe

agrees, *see* Doc. 51 at 9. Therefore, the claims against Ms. Kaiser and Principal

Collins in their official capacities are dismissed.

The Board argues that it is absolutely immune from the state-law negligence

claim against it, citing *Ex parte Wilcox County Board of Education*, 285 So. 3d 765

(Ala. 2019), and *Ex parte Bessemer City Board of Education*, 143 So. 3d 726 (Ala.

2013). Doc. 19 at 2; Doc. 48 at 5 n.8. Doe did not respond to this argument. *See*

Doc. 52. The court finds that the Board is immune from the claim in Count I, so that

claim is dismissed.

Principal Collins and Ms. Kaiser argue that they cannot be held liable in their

individual capacities for the torts alleged in Counts II (negligence as to Defendants

Kaiser and Collins) and III (recklessness/wantonness as to Defendant Collins)

because they could not suspend or expel the Harassing Girls. Doc. 47 at 4-5. These

defendants argue that "[u]nder Alabama law, only the Board of Education has

authority to suspend or expel" students, *id*., and they rely on *Adams v. City of Dothan

Board of Education*, 485 So. 2d 757 (Ala. Civ. App. 1986), which explains that

"school boards and officials" have authority to suspend and expel students, *id*. at

759. But *Adams* does not hold, or even suggest, that only a board has that authority.

Indeed, under the code of conduct for the school in *Adams*, the principal was "required to suspend a student who commits a terminal offense and to recommend to the Board that the student be expelled pending final determination by the Board." *Id*. at 759-60. Accordingly, *Adams* does not stand for a broad, blunt rule that, under Alabama law, neither a principal nor a teacher ever may be found liable on a tort claim for their failure to discipline a student through suspension or expulsion.

In their reply brief, Principal Collins and Ms. Kaiser make a new argument as to why the state-law claims against them should be dismissed. *See* Doc. 54 at 3-4 (citing *D.A.C. v. Thrasher*, 655 So. 2d 959 (Ala. 1995)). The court ordinarily does not consider arguments raised for the first time in reply. Even if the argument were properly made, it would fail. In *Thrasher*, the Alabama Supreme Court affirmed summary judgment on the ground that the plaintiff failed to establish proximate causation because the plaintiff failed to prove that if a school principal had notified the school board of past accusations against a tenured teacher, the board would have held a hearing, believed the accusers, disbelieved the teacher, and removed the teacher, thereby preventing the teacher's later molestation of the plaintiff. 655 So. 2d at 961-62. It would be premature at this stage of the case for the court to draw any conclusions about what evidence of causation Doe might or might not adduce, and what that evidence might be sufficient to establish. Accordingly, this new argument does not require dismissal of Doe's state-law claims.

**IV. CONCLUSION**

For the foregoing reasons, the court will enter an order granting in part the Board's motion and dismissing Count I; denying in part the Individual Defendants' motion; granting Doe's request for leave to file an amended complaint to add Ms. Kaiser to the narrative paragraphs in Count V; and dismissing claims against the Individual Defendants in their official capacity.

**DONE** and **ORDERED** this 16th day of September, 2020.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE